UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
WESTERN DIVISION

Michael Vaughn et al.,                        Case No. 3:13-cv-258

        Plaintiffs

    v.                                           MEMORANDUM OPINION
                                                     AND ORDER

Kyle Shepard, et al.,

        Defendants

This matter is before me on Defendants' motions for summary judgment, Plaintiffs' opposition, and Defendants' replies thereto. This Court has jurisdiction pursuant to 28 U.S.C. § 1332.

## BACKGROUND

The following facts are undisputed. In October 2012, Kyle Shepard owned approximately 25 head of cattle. Kyle's grandfather, Richard Shepard, has a farm at which he resides in McClure, Ohio. The property is deeded to the Richard and Carol Shepard Family & Associates, LLP. Kyle's father, Mark Shepard, lives next to Richard Shepard's farm.

On October 2012, Kyle Shepard had two black Chi/Maine steers at his grandfather's property. The steers were approximately a year old and weighed in at around 1,300 pounds each. The cattle were kept in Richard Shepard's barn for approximately two months. During that period of time, the cattle were cared for by Kyle and his father, Mark.

On the evening of October 24, 2012, Mark Shepard stopped by his father's barn to care for Kyle's cattle. He provided food and water before closing the gate. The next evening when Mark arrived to care for the cattle, he saw the steers were missing. The Henry County Sheriff's

Department was notified as was Kyle that the steers were no longer in the barn and their whereabouts unknown.

Michael Vaughn was driving his truck on State Route 65 in Henry County when two cattle appeared in his lane of travel while a second motor vehicle was coming towards him from the other direction. Vaughn's vehicle struck the cattle and he suffered injuries as a result of the collision.

In February 2013, Vaughn and his wife, Shirley Stander, commenced this action alleging violations of O.R.C. § 951.02 related to the Defendants' failure to maintain adequate control of their cattle. Stander also asserts a loss of consortium claim. The Defendants include Kyle Shepard, Richard Shepard, and Richard and Carol Shepard Family & Associates, LLP.

Defendants Richard Shepard and the LLP move for summary judgment on the basis they are not keepers under the relevant statute, therefore, they are entitled to summary judgment as a matter of law.

Defendant Kyle Shepard also seeks summary judgment because he could not have reasonably anticipated his cattle would escape, and he did not breach the duty of ordinary care. As there is no genuine issue of material fact, Kyle Shepard contends he also is entitled to judgment as a matter of law.

## SUMMARY JUDGMENT STANDARD

Summary judgment is appropriate where "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). The moving party bears the initial responsibility of "informing the district court of the basis for its motion, and identifying those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317,

2

323 (1986). The movant may meet this burden by demonstrating the absence of evidence supporting one or more essential elements of the non-movant's claim. *Id.* at 323-25. Once the movant meets this burden, the opposing party "must set forth specific facts showing that there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986) (*quoting* FED. R. CIV. P. 56(e)).

Once the burden of production has so shifted, the party opposing summary judgment cannot rest on its pleadings or merely reassert its previous allegations. It is not sufficient "simply [to] show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). Rather, Rule 56(e) "requires the nonmoving party to go beyond the pleadings" and present some type of evidentiary material in support of its position. *Celotex*, 477 U.S. at 324; *see also Harris v. General Motors Corp.*, 201 F.3d 800, 802 (6th Cir. 2000). Summary judgment must be entered "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex*, 477 U.S. at 322.

"In considering a motion for summary judgment, the Court must view the facts and draw all reasonable inferences therefrom in a light most favorable to the nonmoving party." *Williams v. Belknap*, 154 F. Supp. 2d 1069, 1071 (E.D. Mich. 2001) (citing *60 Ivy Street Corp. v. Alexander*, 822 F.2d 1432, 1435 (6th Cir. 1987)). However, "'at the summary judgment stage the judge's function is not himself to weigh the evidence and determine the truth of the matter,'" *Wiley v. U.S.*, 20 F.3d 222, 227 (6th Cir. 1994) (quoting *Anderson*, 477 U.S. at 249); therefore, "[t]he Court is not required or permitted . . . to judge the evidence or make findings of fact." *Williams*, 154 F. Supp. 2d at 1071. The purpose of summary judgment "is not to resolve factual issues, but to determine if there are genuine issues of fact to be tried." *Abercrombie & Fitch Stores, Inc. v. Am. Eagle Outfitters, Inc.*, 130 F. Supp. 2d 928, 930 (S.D. Ohio 1999). Ultimately, this Court must determine "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that

one party must prevail as a matter of law." *Anderson*, 477 U.S. at 251-52; *see also Atchley v. RK Co.*, 224 F.3d 537, 539 (6th Cir. 2000).

### KYLE SHEPARD'S MOTION FOR SUMMARY JUDGMENT

Kyle Shepard asserts he is entitled to judgment as a matter of law as he was not negligent under O.R.C. § 951.02, nor did he breach his duty of ordinary care.

Ohio has codified the duties of owners or keepers as it pertains to animals running at large in Chapter 951 of the Ohio Revised Code. At issue here is O.R.C. § 951.10, which states as follows:

> (A) The owner or keeper of an animal described in section 951.02 of the Revised Code who negligently permits it to run at large in violation of that section, is liable for all damages resulting from injury, death, or loss to person or property caused by the animal in any of the places specified in section 951.02 of the Revised Code, or upon the premises of another without reference to the fence that may enclose the premises.
> (B) The running at large of any animal specified in section 951.02 of the Revised Code in or upon any of the places specified in that section is prima-facie evidence in a civil action for damages under division (A) of this section that the owner or keeper of the animal negligently permitted the animal to run at large in violation of section 951.02 of the Revised Code.

Ohio Rev. Code Ann. § 951.10 (West 2013).

The Supreme Court of Ohio has stated that O.R.C. § "951.02 creates a rebuttable presumption that the presence of an animal upon a public road was the result of the negligence of the owner." *Burnett v. Rice*, 39 Ohio St.3d 44, 46 (1988).

The Court in *Burnett* recognized that "the jury apparently concluded that the presumption was outweighed by evidence that appellees had taken reasonable precautions to prevent the escape of their cattle," in rendering a verdict in favor of the cattle owners. *Id.*

Here, Kyle Shepard contends he has presented evidence sufficient to rebut the presumption of negligence. In his affidavit he avers as follows:

> 5. When I care for livestock, I routinely check and observe the gates and barn for any malfunctions or deformities.

4

6. On my last visit to my grandfather's barn prior to October 25, 2012, I observed the gates in the barn for any potential malfunctions, and the gates and barn were in good condition.

7. After October 25, 2012, I observed the gates in my grandfather's barn, and there were no deformities or malfunctions.

8. Other than the gate being open, gates in the barn were completely intact and functional on October 25, 2012.

(Doc. No. 32-4). Kyle's father, Mark Shepard stated the following in his affidavit:

6. I would regularly feed and water the cattle that my son kept in my father's barn, since I live next door to my father, Richard Shepard.

7. On October 24, 2012, I drove to Richard Shepard's property at roughly 8 p.m. to care for my son's steers.

8. On October 24, 2012, I provided food and water for the two steers in my father's barn. After exiting the pen, I latched the gate, closing the steers in the barn.

9. When I left my father's property on evening of October 24, 2012, the steers were secured in the barn with no means of escape.

10. I returned to my father's property on the evening of October 25, 2012, to care for the steers sometime between 7 p.m. and 9 p.m. At that time, I discovered the steers were no longer in the barn.

. . .

13. I have been caring for livestock on my father's property for approximately 47 years.

14. Approximately 15 years ago, there was an electric fence that allowed livestock to access inside of the barn, and a small fenced-in area outside of the barn.

15. Approximately 15 years ago, my son's 4-H cow leapt over the electrical fence, and escaped.

16. Since that time, the electric fence has been taken down, and the livestock have kept in a pen in the barn. Other than this incident, there have been no other cattle that have escaped my father's barn.

17. My father's barn has a pair of sliding, exterior doors, which are made out of wood.

18. We keep the sliding, exterior doors open to provide proper ventilation for any livestock.

19. When I care for livestock, I routinely check and observe the gates in the barn for any malfunctions, deformities, or problems.

20. On October 24, 2012, I observed the gates in my father's barn for any potential malfunctions, and the barn was secure as the gates were working properly.

5

21. On the evening of October 25, 2012, I observed the gates in my father's barn, and there were no obvious deformities, malfunctions, or problems.

22. Other than the gates being open, the gates in my father's barn was completely intact and functional on October 25, 2010[1].

23. I believe the steers may have been deliberately released, as the fencepost that leans against the gate was found against the barn wall on October 25, 2010.

(Doc. No. 32-3).

This evidence is sufficient to rebut the presumption allowing the case to proceed as if the presumption had never been raised. *Ellis v. Miller*, 2001 WL 978868 *3-4 (Ohio Ct. App. 2001) (citations omitted). This, however, does not end the analysis. Although Kyle Shepard argues he can rebut the presumption of evidence because he did not breach the duty of ordinary care, his argument conflates rebutting the presumption with meeting the duty of care.

The gate which kept the cattle enclosed in the barn was on a hinge in order to allow it to swing open. When the gate was closed, it was latched and a fencepost was placed against the gate. (Doc. Nos. 35-2 and 35-3). The doors to the barn were sliding doors and were open at the time the cattle escaped. There was also fencing against open areas along the barn walls, for ventilation purposes, and all agree the cattle did not escape through that fencing.

On the evening of the incident, Mark Shepard averred that after he fed and watered the cattle, he latched the gate shut with the cattle enclosed therein. Kyle Shepard stated that he observed hoof marks in the ground in the barn that evening after the incident indicating the cattle could have only come through the gateway into the barn. (Doc. No. 32-1 at pp. 51-52). Mark Shepard opined the theory of a deliberate release by an unknown party based upon the notion that

---

[1] Mark Shepard's affidavit at paragraphs 22 and 23, refer to the year as 2010 and thus appear to be typographical errors. This is because Mark Shepard's earlier references to the year in his affidavit consistently note the year these events occurred as 2012 as does the complaint and Kyle Shepard's affidavit, the year of this incident was 2012. Accordingly, I will construe the years referenced in the last two paragraphs of Mark Shepard's affidavit as occurring in 2012 and not 2010.

6

following the escape, "the fencepost that leans against the gate was found against the barn wall on October 25, 2010."

Based upon this evidence, I find there is sufficient evidence upon which reasonable minds could differ on whether Kyle Shepard met the duty of care. *See e.g., Horsley v. Essmen*, 145 Ohio Ap.3d 438, 445 (Ohio Ct. App. 2001) (factual issues created as to whether cattle owners exercised ordinary care in maintaining fence to secure cattle) Accordingly, Kyle Shepard's motion for summary judgment is denied.

### RICHARD SHEPARD'S MOTION FOR SUMMARY JUDGMENT

Defendants Richard Shepard and Carol Shepard Family and Associates, Limited Partnership ("hereinafter referred to as Richard Shepard"), move for summary judgment on the basis that they are neither owners or keepers of the cattle under the Ohio statute. Additionally, the Shepards contend there is no evidence to support Plaintiff's claim of their negligence.

Under O.R.C. § 951.02:

> No person who is the owner or keeper of horses, mules, cattle, bison, sheep, goats, swine, llamas, alpacas, or geese, shall permit them to run at large in the public road, highway, street, lane, or alley, or upon unenclosed land, or cause the animals to be herded, kept, or detained for the purpose of grazing on premises other than those owned or lawfully occupied by the owner or keeper of the animals.

The case law on what constitutes the "keeper" under this statute is sparse.

In *Moore v. Ferkel*, 1998 WL 160040 (Ohio Ct. App. 1998), the appellate court reversed a summary judgment ruling as against the owner of the farm upon which a horse escaped and caused injury to a motorist. The appellate court found there were issues of fact which called into question the appellant's status as a "keeper" under § 951.02. Similar to the present case, the animal in question was owned by the son and the farm was owned by the father. The father would feed and

7

water the horse when his son was on vacation or gone for the day.  The father also paid for the electricity which ran to the electric fence and did not charge his son for use of the barn, pen area, or utilities.  "Because [the landowner] built and owned the enclosure by which the horse in question was kept, and provided the electricity to help enclose that horse, a question of fact remains regarding whether he exercised some degree of control over the horse."  *Id.* at *3).

In this case, it is undisputed the Shepards owned the farm and barn, and Richard Shepard occasionally gave water to the cattle, up to two times a month.  Both Richard and Kyle Shepard testified Richard did not care for the cattle as those tasks were undertaken by Kyle and Mark Shepard.  Kyle did keep steers at Richard Shepard's farm prior to taking them to be slaughtered and had done so for at least fifteen years.  Although Richard Shepard did not care for the cattle, he did own the property and allowed Kyle Shepard to keep his cattle in his barn on a regular basis for over a decade.  Ownership of the property alone, without more, is insufficient to constitute control as contemplated by the statute.

In *Godsey v. Franz*, 1992 WL 48532 (Ohio Ct. App. 1992), the appellate court considered whether the defendant landowner was a keeper for purposes of liability.  Although it focused on a different Ohio statute, one pertaining to liability for the owner, keeper, or harborer of a dog, the analysis is instructive to this situation.  "Keepership has a propriety or dominion aspect, and involves the exercise of some degree of management, possession, care, custody or control. . . ."  *Id.* at *3.  The court found insufficient evidence to conclude the landowner was a "keeper" of the dog merely because they owned the property, allowed the dog to roam freely, and occasionally fed the dog.

The evidence presented shows Richard Shepard owned the property upon which the cattle were kept but that he had no involvement with their day-to-day care nor did he maintain the structure or gate at issue.  Without more, I cannot find he exercised a degree of control over the

cattle upon which reasonable minds could disagree and therefore he is entitled to judgment as a matter of law.

## CONCLUSION

Accordingly, Kyle Shepard's motion for summary judgment (Doc. No. 32) is denied. Richard Shepard and Carol Shepard Family and Associates, LLP's motion for summary judgment (Doc. No. 31) is granted.

So Ordered.

s/ Jeffrey J. Helmick
United States District Judge